Thomas PEKULAR, Appellant,

v.

Gordon. H. MANSFIELD, Acting
Secretary of Veterans
Affairs, Appellee.

No. 05–2067.

United States Court of Appeals
for Veterans Claims.

Oct. 31, 2007.

order. Mr. Pekular died while his appeal was pending before the Court and his surviving spouse Marjorie Pekular (movant), filed a motion to substitute herself in place of the appellant for the purpose of pursuing an accrued benefits claim. For the reasons explained below, we will deny Marjorie Pekular's motion to substitute, and we will vacate the Board's decision denying service connection for a lung disorder and dismiss the appeal, pursuant to this Court's holding in *Landicho v. Brown,* 7 Vet.App. 42, 54–55 (1994).

Sean Kendall, of Boulder, Colorado, for the appellant.

Tim S. McClain, General Counsel; R. Randall Campbell, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Debra L. Bernal, all of Washington, D.C., for the appellee.

Before GREENE, Chief Judge, and LANCE and SCHOELEN, Judges.

SCHOELEN, Judge:

This case requires the Court to interpret and to apply the recent decision of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Padgett v. Nicholson,* 473 F.3d 1364 (Fed.Cir.2007) [hereinafter *Padgett III*], *rev'g* 19 Vet.App. 334 (2005) (en banc order) [hereinafter *Padgett II*]. In his appeal, appellant Thomas Pekular, through counsel, sought reversal of an April 25, 2005, Board decision denying service connection for a lung dis-

## I. BACKGROUND

On April 25, 2005, the Board issued a decision denying Mr. Pekular's claims for service connection for a lung disorder, eosinophilia-myalgia syndrome with gastric residuals, and dry eye syndrome, and denying a claim for a compensable disability rating for eosinophilia. Mr. Pekular filed a timely Notice of Appeal to the Court on July 21, 2005. He filed his initial brief on January 30, 2006, and the Secretary filed his brief on June 5, 2006. Mr. Pekular's reply brief was due 21 days later, on June 26, 2006.[1] He did not file a reply brief. After the time for filing the reply brief expired, the matter was sent to the Court's Central Legal Staff (CLS) for an initial evaluation of the case pursuant to the Court's Internal Operating Procedure (IOP) I(a)(1). Pursuant to IOP I(b)(2) and as indicated on the Court's docket, on November 22, 2006, the case was assigned to a single judge.

On November 29, 2006, surviving spouse Marjorie Pekular filed, through counsel, an opposed motion to substitute herself for

---

1. The Secretary served his brief on Mr. Pekular's counsel by mail on June 5, 2006. Secretary's Brief at 19. Thus, the due date of the reply brief is calculated by adding the 14 days allowed to file a reply brief after service of the Secretary's brief, *see* U.S. Vet.App. R. 31(a)(3); the five extra days granted because the Secretary's brief was served by mail, *see* U.S. Vet. App. R. 26(c); and two additional days because the due date otherwise would have been on a Saturday, *see* U.S. Vet.App. R. 26(a)(1).

Mr. Pekular and additionally moved for remand to certify herself as an eligible accrued benefits recipient. Attached to the motion was a copy of Mr. Pekular's death certificate stating that he died on June 15, 2006. That date is after the Secretary filed his brief, but 11 days before Mr. Pekular's reply brief was due.

In a December 22, 2006, single-judge order, the Court denied the motion to substitute, vacated the Board decision, and dismissed the appeal pursuant to *Landicho, supra.* Shortly afterward, the Federal Circuit decided *Padgett III*, and subsequently, pursuant to Rule 35 of the Court's Rules of Practice and Procedure, Mrs. Pekular moved for single-judge reconsideration or, in the alternative, panel review of the Court's December 22, 2006, order. The Court granted reconsideration and referred the matter to this panel, which revoked the single-judge order and sought from the Secretary a response to the motion for reconsideration.

In her motion for reconsideration of the now-revoked single-judge order dismissing this appeal, Mrs. Pekular argues that the Federal Circuit's recent decision in *Padgett III* controls this case. She argues that the case was "submitted on the briefs prior to Mr. Pekular's June 15, 2006[,] death" because no reply brief was filed after the Secretary filed his brief on June 5, 2006. Appellant's Motion for Reconsideration and for Panel Review at 2. She asserts that a case is "submitted for decision" when all briefs in the case have been filed. *Id.* at 2–3.

The Court ordered the Secretary to respond to Mrs. Pekular's motion. In his response, the Secretary argues that the case could not have been submitted to the Court because appellant died before the expiration of the period in which he could have filed a reply brief. Appellee's Response to Appellant's Motion for Reconsid-

eration at 3–4. The Secretary observes that the appellant's "case could not have been 'submitted' to the Court prior to the completion of the briefing schedule." *Id.* at 4. The Secretary also argues, in the alternative, that substitution is not warranted because Mrs. Pekular lacks standing as the Court has not reversed the Board's decision on the merits.

## II. APPLICABLE LAW

### A. Accrued Benefits

■ Generally, a veteran's claim for benefits does not survive the death of that veteran. *See Richard v. West,* 161 F.3d 719, 721 (Fed.Cir.1998). The Court's Rules, however, provide for substitution for the original claimant under limited circumstances. *See* U.S. Vet.App. R. 43. In the case of an appellant who dies during the pendency of the appeal, Rule 43(a) states:

(1) *Before Notice of Appeal.* If a party entitled to appeal dies before filing a Notice of Appeal, the Notice of Appeal may be filed within the time limit in Rule 4 by any person permitted by law to do so.

(2) *After Notice of Appeal.* If a party dies after a Notice of Appeal is filed or while a proceeding is pending in the Court, the personal representative of the deceased party's estate, or any other appropriate person may, to the extent permitted by law, be substituted as a party on motion by such person. Any party may notify the Court of the death of an appellant, and proceedings will then be as the Court directs.

■ A claim for accrued benefits is an exception to the general rule that a veteran's claim for benefits does not survive his death. *See Zevalkink v. Brown,* 102 F.3d 1236, 1242 (Fed.Cir.1996). The movant seeking substitution to pursue an accrued

benefits claim under 38 U.S.C. § 5121 pursues the same arguments made by the original claimant. The appellant's disability compensation claims and the movant's accrued benefits claims are two separate, but related, claims.

▮▮▮ As provided by 38 U.S.C. § 5121,

(a) ... [P]eriodic monetary benefits ... to which an individual was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death (hereinafter ... referred to as "accrued benefits") and due and unpaid, shall, upon the death of such individual be paid as follows:

....

(2) Upon the death of a veteran, to the living person first listed below:

(A) The veteran's spouse.

38 U.S.C. § 5121(a)(2)(A). An accrued benefits claimant may obtain only the benefits that the deceased claimant was entitled to at the time of his death and, further, may only obtain those benefits based upon evidence already in the claimant's file at the time of his death.[2] *See Taylor v. Nicholson,* 21 Vet.App. 126, 127 (2007); *see also Sheets v. Nicholson,* 20 Vet.App. 463, 466 (2006) ("VA must adjudicate an accrued-benefits claim exactly as it would have adjudicated the veteran's underlying claim, applying the same evidentiary standards, rating decisions, and law that it would have applied to the deceased veteran's claim."). Furthermore, in order to obtain any accrued benefits, the claimant must establish both her own status as a qualified accrued benefits recipient, and the deceased claimant's underlying entitlement to benefits. *See Burris v. Principi,* 15 Vet.App. 348, 352–53 (2001).

### B. *Landicho* and *Zevalkink*

In *Landicho, supra,* this Court repudiated its previously routine practice of substituting a qualified accrued benefits claimant for an appellant who died while his appeal was pending before the Court. The Court's decision was based largely on the case or controversy restraints of Article III of the U.S. Constitution. *Id.* at 49. Although the Court was created under Article I of the U.S. Constitution, *see* 38 U.S.C. § 7251, and, therefore, is not necessarily bound by those constraints, the Court has adopted the "case or controversy" requirements of Article III as a matter of prudence. *See Am. Legion v. Nicholson,* 21 Vet.App. 1, 3–4 (2007) (en banc); *Mokal v. Derwinski,* 1 Vet.App. 12, 14–15 (1990).

*Landicho* recognized that a movant seeking substitution after the death of a veteran is only a *"putative* accrued-benefits claimant," and, thus, there was no guarantee that issuing a decision on the deceased appellants' appeal on the merits would amount to any more than an advisory opinion. 7 Vet.App. at 49. Furthermore, the Court found that putative accrued benefits claimants had no standing to pursue appellants' claims because they were not "adversely affected" by the Board decisions on appeal. *Id.; see* 38 U.S.C. § 7266(a) (stating that "a person adversely affected" by a final Board decision must file a Notice of Appeal in this Court within 120 days after the decision is mailed). The Court held that the Board decisions from which the appellants appealed were rendered nonfinal by the filing of an appeal in this Court and became a nullity when the appellants died, based

---

**2.** In 2003, Congress amended section 5121(a) to eliminate a two-year limit on the payment of accrued benefits. *See* Veterans Benefits Act of 2003, Pub.L. No. 108–183, § 104(a), 117 Stat. 2651, 2656. That change would benefit the movant here because it applies to deaths occurring on or after December 16, 2003. *See id.,* Pub.L. No. 108–183, § 104(d).

upon the principle that a claim for veterans benefits dies with the claimant. 7 Vet.App. at 52. Thus, the Court found that the proper remedy when an appellant died while his case was on appeal to this Court was to vacate the underlying Board decision and dismiss the appeal for lack of jurisdiction. *Id.* at 54 (citing *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950) (noting that the "established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss")).

The effect of the *Landicho* decision was that, in every case where an appellant died while his case was pending at this Court, the Court had to vacate and dismiss the appeal, ensuring

> that the Board decision and the underlying regional office [(RO)] decision(s) will have no preclusive effect in the adjudication of any accrued-benefits claims derived from the veteran's entitlements. It also nullifies the previous merits adjudication by the RO because that decision was subsumed in the Board decision. *See Yoma v. Brown,* 8 Vet. App. 298 (1995) (relying on *Robinette v. Brown,* 8 Vet.App. 69, 80 (1995)); *see also Hudgins v. Brown,* 8 Vet.App. 365, 368 (1995) (per curiam order).

*Erickson v. Gober,* 20 Vet.App. 506 (2000) (per curiam order).

In *Hesse v. Brown,* 7 Vet.App. 126, 126–27 (1994) (per curiam order), the Court dismissed an appeal, in part, based on the decision in *Landicho.* In *Zevalkink,* which was consolidated with *Hesse,* the Federal Circuit affirmed this Court's decision in *Hesse* and expressly upheld the Court's decision in *Landicho.* The Federal Circuit found that Mrs. Hesse was not "adversely affected" by this Court's refusal to allow her to substitute herself for her deceased husband, emphasizing that a claim for accrued benefits was a separate claim from the claim for disability compensation benefits. *Zevalkink,* 102 F.3d at 1243–44.

Although the Federal Circuit in *Zevalkink* upheld this Court's *Landicho* decision, it undermined the jurisdictional aspect of *Landicho* because the Federal Circuit did not conclude that dismissal was the only possible result. Rather, the Federal Circuit stated that this Court "could perhaps remand the question of whether [a person] qualifies as an accrued benefits claimant to the RO," but the Federal Circuit refused to require this Court to grant a limited remand in that case. *Id.* at 1244; *see id.* (recognizing that the Court "is not in a position to make" the eligibility determination in the first instance because that would involve factfinding); *Nolan v. Nicholson,* 20 Vet.App. 340, 350 (2006) (observing that the Court has never granted a limited remand for an accrued benefits eligibility determination); *but see Shepard v. West,* 11 Vet.App. 518, 523 (1998) (allowing substitution of a putative accrued benefits claimant for the sole purpose of determining the timeliness of a Notice of Appeal). However, by leaving open in *Zevalkink* an option other than automatic dismissal, the Federal Circuit implicitly indicated that it did not share this Court's opinion that dismissal was jurisdictionally required.[3]

---

3. After *Zevalkink,* however, this Court continued to treat the *Landicho* holding as a jurisdictional rule and regularly denied motions to substitute putative accrued benefits claimants and continued to dismiss appeals for "lack of jurisdiction" when appellants died. *See, e.g., Padgett II,* 19 Vet.App. at 336; *Serra v. Nicholson,* 19 Vet.App. 268, 275 (2005); *Desbrow v. Principi,* 18 Vet.App. 478, 480 (2004) (per curiam order); *Sagnella v. Principi,* 15

### C. *Padgett*

In *Padgett v. Nicholson*, 19 Vet.App. 133, 145–50 (2005) (en banc) [hereinafter *Padgett I]*, this Court reversed a Board decision denying the veteran secondary service connection for a right hip disability. Shortly thereafter, Mr. Padgett's attorney informed the Court that Mr. Padgett had died five months before the Court issued its opinion. The Secretary filed a motion to recall the Court's judgment, and Mr. Padgett's surviving spouse filed a motion to substitute herself in the place of her husband. Following *Landicho, Zevalkink,* and *Richard,* all *supra,* the Court in *Padgett II, supra,* granted the Secretary's motion, denied Mrs. Padgett's motion, withdrew its opinion in *Padgett I,* vacated the Board decision on appeal, and dismissed the appeal.

Mrs. Padgett appealed to the Federal Circuit. In *Padgett III, supra,* the Federal Circuit reversed this Court's decision dismissing Mr. Padgett's appeal. The Federal Circuit held that, where a veteran dies after his case is "submitted for decision, but before the opinion issues," this Court has the authority to issue the judgment nunc pro tunc as of a date before his death and that, under the circumstances in *Padgett,* the substitution of Mrs. Padgett as an accrued-benefits claimant was appropriate. 473 F.3d at 1367. The issuance of an order or decision nunc pro tunc has the effect of giving such a decision retroactive legal effect. *See* Black's Law Dictionary 1100 (8th ed.2004) [hereinafter Black's]

("When an order is signed "nunc pro tunc" as of a specified date, it means that a thing is now done which should have been done on the specified date.'" (quoting 35A C.J.S. *Federal Civil Procedure* § 370 (1960))).

First, in *Padgett III,* the Federal Circuit observed the authority of courts, including Article I courts and the U.S. Supreme Court, to enter judgment nunc pro tunc as of the date of a party's death. In so doing, the Federal Circuit took note of a standard outlined by the Supreme Court:

> "[T]he rule established by the general concurrence of the American and English courts is, that where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties, the judgment or the decree may be entered retrospectively, as of a time when it should or might have been entered up."

*Padgett III,* 473 F.3d at at 1367 (quoting *Mitchell v. Overman,* 103 U.S. 62, 64–65, 26 L.Ed. 369 (1880)). The Federal Circuit further noted that the use of such nunc pro tunc orders should be granted " 'as justice may require.'" *Id.* (quoting *Mitchell,* 103 U.S. at 65).

The Federal Circuit then found three prerequisites for nunc pro tunc relief: (1) The veteran must have died after his case

---

Vet.App. 242, 244–46 (2001) (per curiam order); *Kessel v. Gober,* 14 Vet.App. 185, 185–86 (2000) (en banc order). Moreover, the Federal Circuit continued to affirm such decisions of this Court. *See, e.g., Seymour v. Principi,* 245 F.3d 1377 (Fed.Cir.2001) (appellant died after case was assigned to single judge and after case was subsequently assigned to panel, according to docket in U.S. Vet.App. No. 98–1560); *Richard, infra* (appellant died 10 days

after Notice of Appeal was filed, according to docket in U.S. Vet.App. No. 97–1005), *aff'g Richard v. Gober,* 10 Vet.App. 431 (1997) (per curiam order); *Haines v. West,* 154 F.3d 1298 (Fed.Cir.1998) (appellant died while claim was pending at Board and Court dismissed surviving spouse's appeal of Board's dismissal of clear-and-unmistakable-error claim), *aff'g Haines v. Gober,* 10 Vet.App. 446 (1997) (per curiam order).

was submitted for decision, *id.* at 1369; (2) substitution must be appropriate, that is, the person seeking substitution must have standing under both Article III of the U.S. Constitution and must be adversely affected by the underlying Board decision under 38 U.S.C. § 7266(a), *id.* at 1370; and (3) the considerations of justice and fairness outlined by the Supreme Court in *Mitchell* must be satisfied, *id.* at 1370–71. The Federal Circuit found that Mrs. Padgett had satisfied all of these requirements, and thus, nunc pro tunc relief (specifically, the reissuance of the opinion in *Padgett I* nunc pro tunc, that is, effective before Mr. Padgett's death) was warranted.

## III. ANALYSIS

### A. Applicability of *Padgett III*

■ At the outset, we must state clearly that, inasmuch as the Court has held that the rule articulated in *Landicho* is jurisdictional, such a holding has been overruled in cases where an eligible accrued benefits recipient seeks substitution, both by the implication in *Zevalkink* that the Court could potentially substitute a putative accrued benefits claimant, and by the express finding in *Padgett III* that the Court should allowed substitution in that case. When a court lacks jurisdiction over a matter, it *must* dismiss the matter and is without authority to consider whether equitable relief is warranted. *See, e.g., Bowles v. Russell,* — U.S. —, —, 127 S.Ct. 2360, 2366, 168 L.Ed.2d 96 (2007); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 126 S.Ct. 1235, 1240, 163 L.Ed.2d 1097 (2006). That the Federal Circuit in *Zevalkink* and *Padgett III* has articulated exceptions to the holding in *Landicho* necessarily implies that *Landicho's* rule is not jurisdictional.

However, removing *Landicho's* jurisdictional limitation does not rob it of its force or its precedential effect. *See Day v. Mc-Donough,* 547 U.S. 198, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (upholding a court's sua sponte dismissal of a petition for a writ of habeas corpus based upon a nonjurisdictional statute of limitations defense). *Zevalkink* upheld the result in *Landicho* without holding that the Court lacked jurisdiction to substitute an accrued benefits beneficiary and, in fact, held that the Court had the authority (but not the obligation) to do so, provided that VA made the eligibility determination in the first instance. *See* 102 F.3d at 1244. Nothing in *Padgett III* requires the Court to hear every case in which an appellant died and a putative accrued benefits claimant moves for substitution-indeed *Padgett III* identifies specific cases where substitution or nunc pro tunc relief would not be appropriate.[4] *See* 473 F.3d at 1371 (listing examples of circumstances where substitution and nunc pro tunc relief would not be appropriate). *Landicho* remains a viable precedent, subject to the test we set forth in this opinion derived from *Padgett III.* Thus, in order to determine when *Landicho* applies and when *Padgett III* applies, we must specifically address the prerequisites for substitution and nunc pro tunc relief identified in *Padgett III.*

Before doing so, however, we observe two parts of the *Padgett III* opinion that are not entirely clear. First, in articulating those circumstances in which nunc pro tunc relief may be appropriate, the Federal Circuit referred to the fact that Mr. Padgett's case had been submitted for decision before he died. *See* 473 F.3d at 1367 (finding one question presented by the case is whether the Court has the authority to issue a judgment nunc pro

---

4. For example, if an appellant dies and no eligible accrued benefits recipient seeks sub- stitution, the appeal would be moot and the Court would be required to dismiss it.

tunc "where a veteran dies after his case is submitted for decision, but before the opinion issues"), 1369 (distinguishing *Zevalkink* because, in that case, "the veteran died after filing a [N]otice of [A]ppeal, but before his case was submitted for decision"). At other times, the Federal Circuit observed that the Court had already issued a decision before learning that Mr. Padgett had died. *See id.* at 1369 (finding that the Court's opinion reversing a Board decision is a final judgment that must "be taken into account when deciding an accrued-benefits claim"), 1370–71 (finding that nunc pro tunc relief "furthers judicial and administrative economy by not requiring relitigation and readjudication of issues already decided"). However, reading the decision as a whole, we believe that the references in *Padgett III* to the fact that the Court had already issued a decision reversing Mr. Padgett's case refer solely to the circumstances in *Padgett* and that the rule articulated by the Federal Circuit is that substitution and nunc pro tunc relief may be warranted when the appellant dies after the case is submitted for decision.

Second, we observe that, in *Padgett III,* the Federal Circuit held that both substitution and nunc pro tunc relief were warranted. *Id.* at 1367. However, the nature of each of the two forms of relief granted in *Padgett III* is such that, if one was granted, granting the other might be unnecessary. For example, if the Court had allowed Mrs. Padgett to substitute herself in the place of her deceased husband, the Court could have issued its decision in *Padgett I* in Mrs. Padgett's name as part of her claim for accrued benefits, and the Court would not have needed to issue it nunc pro tunc to a date before Mr. Padgett's death. Likewise, had the Court issued its decision in *Padgett I* nunc pro tunc to a date before Mr. Padgett's death, the decision could have issued in Mr. Pad-

gett's name and the substitution of Mrs. Padgett in his place would not have been necessary, assuming that the Secretary chose not to appeal the decision. If the Secretary were to appeal the decision, it would raise the possibility that someone who was not a party to the Court's decision might be compelled to defend it in a higher court. Rather than face that possibility, we adopt the test in *Padgett III* as a test for whether substitution is warranted. Although that problem might be relieved by granting substitution after the fact, the problem will certainly be avoided in its entirety by allowing substitution in the first instance.

Thus, for the Court to permit substitution and adjudication on the merits, as in *Padgett,* rather than vacatur and dismissal, as in *Landicho,* a three-part test must be satisfied. First, the matter must have been submitted for decision. Second, substitution must be appropriate-that is, the party seeking substitution must have standing. Third, the interests of justice and fairness must support substitution.

### B. When a Case Is "Submitted for Decision"

■ In determining whether substitution is warranted, the first question the Court must answer is whether Mr. Pekular's case had been "submitted for decision" before his death. *Id.* at 1369. The Court has never had occasion to define when a case is submitted for decision. Indeed, the parties have not cited and the Court has been unable to locate any cases in any court where the issue of whether a case has been submitted for decision has been litigated. Thus, we must turn to other authorities to determine when a case has been submitted for decision.

In Mrs. Pekular's motion for reconsideration, she recognizes that the Court has not determined when a case is considered

"submitted for decision." She cites other authorities in an attempt to define when a case is submitted, including Rule 50(a)(2) of the Federal Rules of Civil Procedure, Rule 34(f) of the Federal Rules of Appellate Procedure, and the Federal Circuit's IOP. She concludes that, because most cases are decided in this Court without oral argument, submission occurs once briefing is complete. She further argues that briefing is complete when all briefs have been filed and that all briefs in *Pekular* were filed at the time the Secretary filed his brief. In his response to the motion for reconsideration in *Pekular*, the Secretary observes that Mr. Pekular died without filing a reply brief prior to the completion of the briefing period. Thus, the Secretary asserts that Mr. Pekular's case had not been submitted for decision prior to his death.

We begin our analysis with Mrs. Pekular's references to the Federal Rules of Appellate Procedure and the Federal Circuit's IOP, because both authorities apply to practice before the Federal Circuit. Thus, they may provide insight into when the Federal Circuit considers a case submitted. Three sources are particularly pertinent. First, Rule 34(f) of the Federal Rules of Appellate Procedure refers to the submission of a case, stating: "(f) **Submission on Briefs.** The parties may agree to submit a case for decision on the briefs, but the court may direct that a case be argued." FED. R.APP. P. 34(f). Second, Rule 34(a) of the Federal Circuit's Rules of Practice supplements that rule and states: "(a) **Reply Brief Instead of Oral Argument.** If an appeal is not called for oral argument and the appellant declined to file a reply brief in anticipation of replying during oral argument, the appellant may file a reply brief within 14 days after the notice that the appeal will be submitted on the briefs." FED. CIR. R. 34(a). Furthermore, the Federal Circuit's IOP provides a definition of "submission": " 'Submission'—Occurs immediately after hearing, or on the date a case is submitted on the briefs." Fed. Cir. IOP # 1(2) (Mar. 7, 2006). The Federal Circuit's IOP also makes clear that cases are assigned to a panel before they are considered "submitted." *See* Fed. Cir. IOP # 2(6) (Apr. 9, 1998) (discussing "Postpaneling, presubmission motions"); Fed. Cir. IOP # 8(4) (Apr. 9, 1998) (providing for a procedure where a panel case may be voted on prior to conference in cases submitted on the briefs).

Considering these provisions together, we observe that the Federal Circuit considers a case submitted immediately after oral argument, if one is held. Indeed, that is consistent with the practice of the presiding judge who states upon completion of the oral argument that "the case is submitted." However, the definition of when a case is "submitted" for cases that are not argued-"on the date a case is submitted on the briefs"—is quite circuitous. Some clarity can be found by looking to the Federal Circuit's calendar, available at http://www.cafc.uscourts.gov/calendar.html (last visited Oct. 30, 2007). For each argument session, panels are convened to hear a number of cases. Some of those cases are listed to be "argued" and some listed "on the briefs." *Id.* In view of the Federal Circuit's IOP and its calendar, cases that are "submitted on the briefs" are considered submitted on the date on which they are calendared with the cases argued before the same panel.[5]

---

5. Moreover, the U.S. Courts of Appeals for the Third, Sixth, and District of Columbia Circuits appear to follow the same practice as the Federal Circuit. *See* 3d Cir. IOP 4.1 (stating that, "[a]fter a case has been argued or submitted to a panel of the court," a confer-

That definition of when a case is submitted cannot easily be applied in this Court. There are two significant differences between the manner in which the Federal Circuit decides cases and the manner in which this Court decides cases. First, this Court hears oral argument in only a fraction of cases decided. *See* U.S. COURT OF APPEALS FOR VETERANS CLAIMS ANNUAL REPORTS, *available at* http://www.vetapp.gov/documents/Annual—Reports.pdf (last visited Oct. 30, 2007). Second, the majority of this Court's decisions are issued by a single judge rather than by a panel of judges. The effect of single-judge dispositions cannot be overstated. The date on which a panel of Federal Circuit judges convene to decide a case is set in advance and known to the parties. However, a single-judge does not convene with anyone to make a decision, the date for the decision is not planned in advance, and the parties are not notified of when a single judge will first consider their case.

Next, we turn to *Black's* definition of the word "submit": "To end the presentation of further evidence in (a case) and tender a legal position for decision." BLACK'S 1466. The use of the phrase "presentation of further evidence" suggests that this definition refers to proceedings in a trial court. This Court does not generally allow presentation of evidence. *See Bonhomme v. Nicholson,* 21 Vet.App. 40, 43–44 (2007) (per curiam order). However, to the extent that *Black's* defines "submit" as the tendering of a legal position for decision, we find that definition highly persuasive. In this Court, the parties generally have completed tendering their legal position to the Court upon the completion of the briefing period, which, because the filing of the reply brief is optional, ends upon the occurrence of one of the three following events: (1) The filing of the appellant's reply brief, (2) the expiration of the time to file a reply brief, or (3) the filing of a waiver of the right to file a reply brief. *See* U.S. VET.APP. R. 28(a)-(d) (filing of briefs).

Once the parties have ended their presentation of their legal positions to the Court, any further delay in the issuance of a decision is generally due solely to the Court. Such delay may be the ordinary delay inherent in the time it takes the Court to review the briefs and to draft, circulate, and issue a decision. Alternatively, delay might be caused by other factors, such as when a case is stayed after briefing awaiting the issuance of a decision in a related case that might be dispositive of the matter. Nevertheless, whatever delay occurs in the resolution of a case after the briefing period is completed is generally attributable solely to the internal workings of the Court and not to the parties. That factor is important because, in *Padgett III*, the Federal Circuit held that nunc pro tunc relief was appropriate " 'where the delay in rendering a judgment or a decree arises from the act of the court, that is, where the delay has been caused either for its convenience, or by the multiplicity or press of business, either the intricacy of the questions involved, or of any other cause not attributable to the laches of the parties.' " *Padgett III,* 473 F.3d at 1367 (quoting *Mitchell,* 103 U.S. at 64–65).

ence is held, and further stating that "conferences in submitted cases may be held by telephone or views may be exchanged by electronic mail prior to the submission date"); 6th Cir. IOP 206(a) (stating that, "[a]t the conclusion of each day's arguments, the panel usually holds a conference concerning the cases submitted that day"); D.C.CIR. HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES XI. C.2 (stating that "[t]he merits panel discusses cases submitted without oral argument at a conference following oral argument on the day on which the case was originally scheduled to be heard"), XII.B (same).

Thus, we hold that a case is submitted to the Court in the ordinary course of business upon completion of the briefing period, which occurs when one of the following three events happens: (1) The filing of the appellant's reply brief, (2) the expiration of the time to file a reply brief, or (3) the filing of a waiver of the right to file a reply brief. Applying this test to the rule set forth in *Padgett III*, substitution of an accrued benefits claimant is warranted only if one of these three events occurs prior to the death of the appellant.

Thus, *Pekular* was not submitted to the Court for decision prior to Mr. Pekular's death because he did not file a reply brief or a waiver of his right to do so prior to his death and because he died before the expiration of the time to file his reply brief. Because Mr. Pekular died before his case was submitted for decision, *Padgett III* does not apply in *Pekular*. The Court need not address the other factors of the three-part test—standing and the interests of justice and fairness. Accordingly, the Court will vacate the Board's decision on appeal and dismiss the appeal, pursuant to *Landicho*, and will deny Mrs. Pekular's motion to substitute.

### IV. CONCLUSION

Upon consideration of the foregoing, Mrs. Pekular's motion to substitute herself as the appellant and to remand the matter is denied; pursuant to *Landicho* and *Zevalkink*, the Board's April 25, 2005, decision denying service connection for a lung disorder is VACATED and the appeal is DISMISSED.