# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1620

SIMONA SUGUITAN, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before MOORMAN, SCHOELEN, and PIETSCH, *Judges*.

## O R D E R

Pending before the Court is Ms. Suguitan's pro se appeal of an April 4, 2012, Board of Veterans' Appeals (Board) decision. The Board found that Ms. Suguitan was not entitled to a one-time payment from the Filipino Veterans Equity Compensation Fund (FVECF or fund) as the surviving spouse of veteran Luis S. Suguitan, who had qualifying military service in the Philippines. Ms. Suguitan died during the pendency of this appeal and her son, Benedicto Suguitan, has moved to be substituted as the appellant. The issue we address is whether to grant Benedicto's motion to substitute.

For the reasons discussed below, we hold that Benedicto lacks standing to pursue Ms. Suguitan's appeal. The Court therefore will deny his motion to substitute, vacate the Board's April 4, 2012, decision, and dismiss Ms. Suguitan's appeal. *See Landicho v. Brown*, 7 Vet.App. 42, 54-55 (1994) (when a claimant dies while an appeal of a Board decision is pending, the appropriate remedy is to vacate the Board decision from which the appeal was taken and dismiss the appeal); *see also Zevalkink v. Brown*, 102 F.3d 1236, 1243-44 (Fed. Cir. 1996) (affirming *Landicho*).

## I. BACKGROUND

Ms. Suguitan was married to Filipino veteran Luis S. Suguitan, who died on October 15, 1996. More than 12 years later, on February 17, 2009, President Obama signed into law the American Recovery and Reinvestment Act of 2009 (ARRA), which established the FVECF. Pub. L. No. 111-5, § 1002, 123 Stat. 115 200-02 (2009). Section 1002 of the ARRA authorized the Secretary of VA to make one-time payments from the fund to eligible persons, defined as those with qualifying military service during World War II in either the organized military forces of the

Government of the Commonwealth of the Philippines or in the Philippine Scouts.[1] *Id*. Payments may be made to eligible persons who submit a claim for section 1002 benefits "during the one-year period beginning on the date of enactment." *Id*. at § 1002(c)(1). "If an eligible person who has filed a claim for benefits under [section 1002] dies before payment is made, the payment . . . shall be made instead to the surviving spouse, if any, of the eligible person." *Id*. at § 1002(c)(2).

In establishing the fund, Congress explained that many Filipino veterans who served under the control of the U.S. Armed Forces during World War II were not eligible for the full range of benefits available to other veterans and many were paid benefits at a reduced rate pursuant to the so-called Rescissions Acts of 1946. *Id*. at § 1002(a)(5)-(8).[2] Under the FVECF provisions, qualifying U.S. citizens receive a one-time payment of $15,000, while non-citizens receive $9,000. *Id*. at § 1002(e). Moreover, the FVECF provisions require the Secretary of VA to administer FVECF claims "in a manner consistent with applicable provisions of title 38, United States Code, and other provisions of law." *Id*. at § 1002(j)(2). Acceptance of a payment by an eligible person or surviving spouse constitutes "a complete release of any claim against the United States by reason of any [qualifying] service" but does not affect entitlement to benefits "which the person would have been eligible to receive based on laws in effect as of the day before the date of . . . enactment." *Id*. at § 1002(h)(1), (2); *see generally Recinto*, 706 F.3d at 1177 (explaining that acceptance of an FVECF payment does not disentitle a claimant to any other benefits).

On November 12, 2009, Ms. Suguitan filed a claim for a payment from the FVECF, listing her deceased husband, Luis Suguitan, as an eligible claimant with qualifying military service and

---

[1] The ARRA defines an "eligible person" as any person who

(1) served--

> (A) before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July 26, 1941, including among such military forces organized guerilla forces under commanders appointed, designated, or subsequently recognized by the Commander in Chief, Southwest Pacific Area, or other competent authority in the Army of the United States; or

> (B) in the Philippine Scouts under section 14 of the Armed Forces Voluntary Recruitment Act of 1945 (59 Stat. 538); and

(2) was discharged or released from service described in paragraph (1) under conditions other than dishonorable.

*Id*. at § 1002(d).

[2] A brief history of the legislation relating to veterans benefits for Filipinos who served under the U.S. Army in World War II is provided in *Recinto v. U.S. Dept. of Veterans Affairs*, 706 F.3d 1171, 1173 (9th Cir. 2013). For a more detailed history, *see* Michael A. Cabotaje, *Equity Denied: Historical and Legal Analysis in Support of the Extension of U.S. Veterans' Benefits to Filipino World War II Veterans*, 6 Asian L.J. 67 (1999).

herself as his surviving spouse. Following an unfavorable VA regional office (RO) decision, Ms. Suguitan filed an appeal with the Board. In its April 4, 2012, decision, the Board found that Luis Suguitan had qualifying military service under section 1002(d) and thus was an "eligible person" for purposes of payment from the fund. However, the Board denied the claim because Luis Suguitan, having died prior to the enactment of section 1002, did not file a claim thereunder. Ms. Suguitan filed a timely Notice of Appeal with the Court on May 21, 2012. In her pro se brief, she conceded that FVECF benefits "are applied only to the living veteran," but argued that section 1002 violated constitutional equal protection guarantees by discriminating against surviving spouses of veterans who died before the law was enacted. While her claim was pending at the Court, she died.

On April 14, 2014, Benedicto Suguitan, the appellant's son, filed through counsel a motion for substitution of party under Rule 43(a) of this Court's Rules of Practice and Procedure and the decision in *Padgett v. Nicholson*, 473 F.3d 1364 (Fed. Cir. 2007) (holding that this Court may, upon substitution of a party for a deceased appellant, issue a nunc pro tunc order dated prior to the appellant's death). He contends that, if substitution were granted, it would be appropriate for the Court to issue a favorable nunc pro tunc order as to the Board's denial of Ms. Suguitan's claim for an FVECF payment, dated prior to Ms. Suguitan's death. He argues that such an order would allow Ms. Suguitan's estate to collect the FVECF payment owed to Ms. Suguitan at the time of her death and that he would thereby benefit as a beneficiary of the estate by virtue of his familial relationship.

The Secretary opposes the motion to substitute, arguing that Benedicto lacks standing because he cannot show that he was adversely affected by the Board's decision. He contends that Benedicto is not a person designated by Congress as eligible for an FVECF payment potentially owed to either veteran Luis Suguitan or to his surviving spouse, Ms. Suguitan, prior to their respective deaths. The Secretary emphasizes that the plain language of the statute creating the FVECF only authorizes payment to qualifying veterans and, in certain circumstances, their surviving spouses. He further emphasizes that Benedicto has not shown that he can recover as an "accrued benefits" claimant under 38 U.S.C. §§ 5121 and 5121A, which provide limited opportunities for certain survivors to pursue a deceased claimant's entitlement to VA benefits. The Secretary argues alternatively that Benedicto's interest is too attenuated, because, inter alia, he has not demonstrated that he is a beneficiary of Ms. Suguitan's estate, having failed to inform the Court whether she died intestate.

## II. ANALYSIS

This Court may, in its discretion, allow a third party to substitute for an appellant who dies during the pendency of an appeal. Rule 43(a)(2) of this Court's Rules of Practice and Procedure provides as follows:

> If a party dies after a Notice of Appeal is filed or while a proceeding is pending in the Court, the personal representative of the deceased party's estate or any other appropriate person may, to the extent permitted by law, be substituted as a party on motion by such person.

U.S. VET. APP. R. 43(a)(2). Substitution requires consideration of the interest of the movant, as well as "considerations of delay, unfairness, and inefficiency." *Breedlove v. Shinseki*, 24 Vet.App. 7, 21 (2010).

## *A. Standard for Substitution*

Typically, this Court grants substitution after a movant shows that he or she has been determined by the Secretary to be a proper "accrued benefits" claimant under 38 U.S.C. § 5121. *Breedlove*, 24 Vet.App. at 20-21. Section 5121 provides a mechanism for certain categories of a claimant's survivors, including the claimant's spouse, children, and dependent parents, to recover "sums owing to the [claimant] for prior periods," but "'due and unpaid'" to the claimant at the time of death. *Zevalkink*, 102 F.3d at 1242 (quoting 38 U.S.C. § 5121); *Haines v. West*, 154 F.3d 1298, 1301-02 (Fed. Cir. 1998); *see also Jones v. West*, 136 F.3d 1296, 1299-1300 (Fed. Cir. 1998) (holding that accrued benefits must be based on a claim pending at the time of the veteran's death or an existing rating or decision).[3]

Section 5121A provides that, where a veteran dies with a claim for benefits pending before VA, VA may substitute a living person who would be eligible to receive accrued benefits "for the purpose of processing the claim to completion." 38 U.S.C. § 5121A. We held in *Breedlove* that where VA has determined that substitution of a movant before the agency is appropriate under section 5121A, the movant "has standing [before this Court] to pursue substitution on the veteran's claim because he or she is affected by the VA adjudications on the veteran's claim in the same way the veteran was affected at the time he filed his Notice of Appeal." 24 Vet.App. at 20 (quoting 38 U.S.C. § 7266(a)).

In the present case, Benedicto does not argue that he has standing to be substituted on this appeal as a result of his status as an accrued benefits beneficiary under section 5121. In fact, he concedes that payments from the FVECF are not accrued benefits within the meaning of that provision because they are lump sum entitlements. The Court agrees. Section 5121 by its terms only applies to monetary benefits that are "periodic." 38 U.S.C. § 5121(a). That term excludes one-time, lump-sum payments. *Pappalardo v. Brown*, 6 Vet.App. 63, 65 (1993) (holding that payments for specialty adapted housing are not "periodic monetary benefits" because such benefits may be paid only once); *see also Gillis v. West*, 11 Vet.App. 441, 442-43 (1998) (holding that automobile purchase payments cannot be claimed under section 5121 because, although such benefits may be paid more than once, payment is not made periodically, meaning at regular intervals). Section 1002(f) of the ARRA clearly establishes that FVECF payments are one-time payments, providing that "[t]he Secretary may not make more than one payment under this section for each eligible

---

[3] Accrued benefits are distinct from "death benefits," which are "continuing, periodic benefits based on the beneficiary's status" as a qualifying relative. *Zevalkink*, 102 F.3d at 1242. Death benefits include death compensation under chapter 11, dependency and indemnity compensation under chapter 13, and death pension under chapter 15.

person." Section 5121 therefore does not apply to FVECF payments and cannot provide a basis for Benedicto's substitution.[4]

Benedicto's central argument is that he is entitled to substitution based on a line of cases granting nunc pro tunc relief. Specifically, in *Padgett*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that, when a claimant dies after his case is "submitted for decision, but before the opinion issues," this Court has the authority to issue the judgment nunc pro tunc as of a date before the claimant's death. 473 F.3d at 1367-98. "The issuance of an order or decision nunc pro tunc has the effect of giving such a decision retroactive legal effect." *Pekular v. Mansfield*, 21 Vet.App. 495, 500 (2007). Benedicto asserts that the Court should issue a decision dated prior to his mother's death. He argues that, in so doing, his mother's estate may collect any benefits owed to her at the time of her death and that he, as an heir to the estate, would stand to benefit from such a ruling. Accordingly, he argues that substitution should be granted.

The Secretary asserts that this avenue for obtaining substitution applied only in the accrued-benefits context and was foreclosed by the creation of section 5121A, as recognized in this Court's decision in *Breedlove*. He broadly argues that, where the benefit is not an accrued benefit, substitution before this Court may never be granted. We disagree. In issuing *Breedlove*, the Court recognized that *Pekular*, which applied nunc pro tunc relief in the context of accrued benefits, was superceded by section 5121A. However, neither this Court nor the Federal Circuit has ruled that, where the benefit is a non-accrued benefit, the party seeking substitution is left without recourse. In *Padgett*, the Federal Circuit clearly explained that "[i]t would be incongruous if the authority to provide nunc pro tunc relief were not available to the Veterans Court," especially "in view of the purpose of the veterans' benefits scheme and the Veterans Court's role within it." 473 F.3d at 1367-68. While nunc pro tunc relief has been superceded by the substitution statute section 5121A, the Court declines to hold that nunc pro tunc relief is never warranted for non-accrued benefits.

However, the Court need not determine definitively whether nunc pro tunc relief is available in non-accrued benefits substitution cases because, even applying that standard to this case, the Court holds that Benedicto does not meet the burden of demonstrating that he is eligible for such relief. In *Pekular*, this Court summarized *Padgett's* three prerequisites for granting nunc pro tunc relief: (1) that the veteran died after the case was submitted to this Court for decision; (2) that substitution is appropriate because the person seeking substitution has standing; and (3) that considerations of justice and fairness have been satisfied. *Pekular*, 21 Vet.App. at 500-501. In this case, the determinative factor is whether Benedicto has standing to be substituted. We hold that he does not.

---

[4] As a result of this holding, we need not address whether section 5121 of title 38 could be inapplicable to FVECF claims for the additional reason that section 5121 may be preempted by ARRA section 1002(c), which governs the scope of FVECF survivor claims. *See* ARRA § 1002(j)(2) (Secretary to administer section 1002 consistent with applicable provisions of title 38, "except to the extent otherwise provided in this section.").

*B. The Necessity of Standing*

A party seeking substitution before this Court must have both standing under Article III of the U.S. Constitution and be "adversely affected" by the underlying Board decision under 38 U.S.C. § 7266(a). *Pekular*, 21 Vet.App. at 500; *see Hyatt v. Shinseki*, 566 F.3d 1364, 1367 ( Fed. Cir. 2009); *Padgett*, 473 F.3d at 1370; *Breedlove*, 24 Vet.App. at 15-17; *Landicho*, 7 Vet.App. at 47-49. This Article I Court, as a matter of policy, adheres to the jurisdictional case-or-controversy requirements of Article III, § 2, of the U.S. Constitution. *Padgett*, 22 Vet.App. at 162; *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990).

To establish Article III standing, the party seeking judicial relief must demonstrate an injury that is "'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l., USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geerston Seed Farms*, 130 S. Ct. 2743, 2752 (2010)). "Where Congress has accorded a procedural right to a litigant, such as the right to appeal an administrative decision, certain requirements of standing–namely immediacy and redressability, as well as prudential aspects that are not part of Article III–may be relaxed." *Consumer Watchdog v. Wis. Alumni Research Foundation*, 753 F.3d 1258, 1261 (Fed. Cir. 2014) (citing *Massachusetts v. E.P.A.*, 549 U.S. 497, 517–18 (2007). However, the "'requirement of injury in fact is a hard floor of Article III jurisdiction.'" *Id*. (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)); *see also Zevalkink*, 102 F.3d at 1243 ("To have standing, a party must have suffered some actual or threatened injury.").

The requirement in section 7266(a) that an individual must be adversely affected to obtain review by this Court "echoes the standing requirement that a party must 'show that he personally has suffered some actual or threatened injury as the result of the putatively illegal conduct of the [appellee].'" *Landicho*, 7 Vet.App. at 49 (1994) (quoting *Waterhouse v. Principi*, 3 Vet.App. 473, 475 (1992)); *see also Zevalkink*, 102 F.3d at 1243.

When a person seeks to substitute for a deceased appellant for the purposes of obtaining a nunc pro tunc order from the Court, the standing inquiry focuses on whether the lack of such an order would have "'continuing relevance,' such that, but for the nunc pro tunc relief, the [movant] would be adversely affected." *Hyatt*, 566 F.3d at 1369 (quoting *Padgett*, 473 F.3d at 1370). In other words, the movant must show that he or she could benefit from a nunc pro tunc order addressing the benefit at issue on appeal. Where a nunc pro tunc order could not positively impact the movant's quest to recover a VA benefit owed to the deceased appellant, substitution is properly denied for lack of standing. *Id*. at 1369-71 (holding that a surviving spouse had no standing to substitute for her husband who died while his appeal was pending before this Court because her claim for accrued benefits could not be impacted by the nunc pro tunc order sought); *Pelea* v. *Nicholson*, 497 F.3d 1290, 1291-92 (Fed. Cir. 2007) (affirming this Court's denial of substitution by a claimant's estate because the estate was not listed as an accrued benefits beneficiary in 38 U.S.C. § 5121 and therefore could not recover any payment resulting from a nunc pro tunc order favorable to the claimant).

Benedicto argues that he will be adversely affected by this Court's refusal to issue a nunc pro tunc order because he is an heir to Ms. Suguitan's estate under Phillipine law. Motion for Substitution at 8 (citing Civil Code of the Philippines, § 960-62, R.A. 386, as amended (1949)). He contends that a favorable nunc pro tunc judgment, dated prior to Ms. Suguitan's death, would enable her estate to recover her FVECF payment and that he, in turn, would be entitled to part of that recovery as a beneficiary of the estate. This argument relies, inter alia, on the premise that Ms. Suguitan's estate would possess a "claim to a payment from the FVECF" owed to Ms. Suguitan at the time of her death. Motion for Substitution at 8. The only argument that Benedicto appears to make in support of this premise is that a contrary interpretation of the law would conflict with the remedial nature of the FVECF provisions. *Id.* at 5-6. The Secretary disagrees, arguing that Congress is free to define the parameters of a remedial statute and has, in section 1002(c), clearly limited recovery of an FVECF payment following an eligible veteran's death to a surviving spouse. He contends that Congress has thereby excluded the possibility of payment to the surviving spouse's estate.

The Court finds the Secretary's argument to be persuasive. When interpreting a statute, the Court "'begins with the language of the statute.'" *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntee v. M.S.P.B.*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)); *see Sharp v. Shinseki*, 23 Vet.App. 267, 271 (2009); *see also McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988))), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). If "the plain meaning of a statute is discernable, that 'plain meaning must be given effect,'" *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996) (quoting *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995)), unless a "'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters,'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

ARRA section 1002(c) provides as follows:

PAYMENTS.--

(1) IN GENERAL.–The Secretary may make a payment from the compensation fund to an eligible person who, during the one-year period beginning on the date of the enactment of this Act, submits to the Secretary a claim for benefits under this section. . . .

(2) PAYMENT TO A SURVIVING SPOUSE.–If an eligible person who has filed a claim for benefits under this section dies before payment is made under this section, the payment under this section shall be made instead to the surviving spouse, if any, of the eligible person.

In section 1002, Congress explicitly addressed the question of who can recover an FVECF payment. The plain language of this provision clearly limits eligibility for an FVECF payment to

two classes of individuals: (1) An eligible person (with qualifying service) who files a claim for such benefit within the one-year period beginning on the date of enactment (February 17, 2009) and (2) the surviving spouse, if any, of an eligible veteran who had a claim pending at the time of the veteran's death.

Congress further limited the pool of eligible surviving spouses by making a surviving spouse's claim clearly derivative of the veteran's claim. In other words, the surviving spouse is only eligible to receive a payment *if* the veteran had qualifying service *and* had filed a claim for an FVECF payment while he was alive that was still pending at his death. There is no indication in that provision that Congress meant to grant a surviving spouse an independent right to file a claim in the first instance on behalf of the eligible, but deceased, claimant. Furthermore, there is no indication that payments may be made to any party who is not the eligible claimant or his surviving spouse. Congress specifically made no provision for payments to the heirs of an estate. Indeed, the inclusion of the qualifying language "if any" indicates that Congress contemplated a scenario where there was no surviving spouse, yet it made no provision for payments to the veteran's or spouse's estate or any other individual, such as an adult child. Moreover, section 1002(h) appears to reinforce the limitation contained in section 1002(c)(2), providing that a general release of certain benefits claims is effected by "the acceptance by an eligible person or surviving spouse, as applicable, of [an FVECF] payment." ARRA § 1002(h)(1).

Not only is the plain language of the statute clear, but Benedicto has not identified, and the Court is unable to discern, any indication in the legislative history of the ARRA that Congress intended to authorize an FVECF payment to any of the following: (1) A surviving spouse if the eligible veteran died without filing a claim; (2) a deceased spouse's estate or; (3) a surviving adult child of the veteran or his spouse. We are unpersuaded by Benedicto's argument that we should hold otherwise simply because of the remedial nature of the statute. *See Haines v. West*, 154 F.3d 1298, 1301-02 (Fed. Cir. 1998) ("a party 'cannot rely upon the generous spirit that suffuses the law generally to override the clear meaning of a particular provision.'" (quoting *Smith v. Brown*, 35 F.3d 1516, 1525 (Fed. Cir. 1994))). Congress is free to establish the scope of remedial legislation and has clearly done so with respect to the scope of survivors' entitlement to FVECF payments following the death of a qualifying person with eligible military service.

According to the statute's plain language, the only eligible recipients of FVECF payments are (1) a veteran with qualifying service who filed a claim within the relevant time period, and (2) a surviving spouse of an eligible veteran who had a properly filed claim that was pending at his death. Moreover, because Congress expressly limited the pool of recipients, an eligible surviving spouse's claim to a qualifying veteran's payment under section 1002 terminates with the surviving spouse's death and no other entity or person may recover the payment. Because Ms. Suguitan was the spouse of a veteran who had not filed a claim before his death, she lacked recourse to recover payment under the statute. Therefore, Benedicto, as the putative beneficiary of her estate, has not been adversely affected by the Board's decision and he lacks standing to be substituted on this appeal.

8

The Court's holding today is consistent with precedential case law. The Federal Circuit and this Court have consistently held that, where Congress has clearly enumerated the categories of persons who may seek to recover a claimant's statutory benefits upon the claimant's death, other persons or entities may not recover. *See Haines*, 154 F.3d at 1301 (upholding this Court's ruling that a deceased veteran's surviving spouse did not have standing to appeal the Board's denial of her husband's request for revision of a final VA benefits decision based on clear and unmistakable error (CUE)); *see also Pelea*, 497 F.3d at 1292-93 (holding that the estate could not substitute before the Court to pursue the claim of a deceased veteran's widow for dependency and indemnity compensation (DIC) under § 38 U.S.C. § 1311, because the widow's claim terminated with her death under statutory language providing for payment of DIC benefits to "a surviving spouse"); *Nolan v. Nicholson*, 20 Vet.App. 340, 350 (2006) (holding that a daughter lacked standing before the Court to pursue her mother's death benefits claim because the applicable statute "clearly limits its scope to surviving spouses" and no claim had been made for accrued benefits).

### C. Constitutional Argument

We note that Benedicto has not disputed the Board's finding that Ms. Suguitan was ineligible for an FVECF payment under the terms of the statute because Luis Suguitan did not fulfill the filing requirement, having died prior to the enactment of the ARRA. Nevertheless, he indicates in his motion that, if substituted, he would pursue the argument made by Ms. Suguitan that section 1002 is constitutionally defective in failing to afford equal protection to surviving spouses of veterans who died before the creation of the FVECF.[5] He indicates that he seeks substitution to litigate this constitutional equal protection claim to a conclusion. That merits issue is not, however, relevant to the question of standing. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) (standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal); *Flast v. Cohen*, 392 U.S. 83, 99 (1968) ("The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated."). Moreover, having found that Benedicto lacks standing to substitute for Ms. Suguitan, we are not at liberty to address issues regarding the merits of her appeal. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94, 102 (1998) (finding that a court may not hypothetically assume jurisdiction to reach the merits as doing so would produce a prohibited advisory opinion); *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed. Cir. 2003) ("Because standing is jurisdictional, lack of standing precludes a ruling on the merits.").

### III. CONCLUSION

We hold that a surviving spouse's claim to an FVECF payment does not survive her death. Because Ms. Suguitan was not entitled to an FVECF payment at her death, Benedicto has not demonstrated that he, as the asserted beneficiary of her estate, could benefit from a nunc pro tunc order from the Court favorable to her claim. The Court therefore will deny his motion to substitute

---

[5] The Court notes that the U.S. Court of Appeals for the Ninth Circuit recently addressed other aspects of the constitutionality of the FVECF in *Recinto*, 706 F.3d at 1176-78.

for lack of standing.  Because this appeal has become moot by virtue of the death of the appellant, the Board's decision will be vacated, and this appeal will be dismissed. *See Pekular*, 21Vet.App. at 501; *Landicho*, 7 Vet.App. at 54-55.

On consideration of the foregoing, it is

ORDERED that the motion for substitution of a party is DENIED.  It is further

ORDERED that the April 4, 2012, Board decision is VACATED.  It is further

ORDERED that this appeal is dismissed for lack of jurisdiction.


DATED: October 29, 2014                                              PER CURIAM.