# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 02-2259

BARNEY O. PADGETT, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

SUE PADGETT, MOVANT.

On Remand from the U.S. Court of Appeals for the Federal Circuit

Before GREENE, *Chief Judge*, and KASOLD, HAGEL, MOORMAN, LANCE, DAVIS, and
SCHOELEN, *Judges*.

**O R D E R**

Currently pending before the Court are two motions related to this World War II veteran's appeal. The first is the Secretary's May 19, 2005, motion to, inter alia, dismiss this appeal as moot, and the second is the movant's July 21, 2005, motion for substitution. The facts relevant to the disposition of these motions are as follows.

In March 1993, the appellant, Barney O. Padgett, filed a disability compensation claim with his VA regional office (RO) for a right-hip disorder. Nearly a decade later, in August 2002, the Board of Veterans' Appeals (Board) denied that claim, finding that his disability was not service connected. Mr. Padgett appealed, and a panel of judges initially vacated that Board decision. *Padgett v. Principi*, 18 Vet.App. 188 (2004) (withdrawn). However, the full Court later agreed to rehear the case. *Padgett v. Principi*, 18 Vet.App. 404 (2004) (per curiam order).

In April 2005, the full Court reversed the Board's denial of secondary service connection for Mr. Padgett's disability, vacated the Board's denial of direct and presumptive service connection, and remanded his claim to VA for further adjudication. *See Padgett v. Nicholson* (*Full Court Opinion*), 19 Vet.App. 133 (2005) (en banc). In so doing, the full Court also unanimously held that under the "clearly erroneous" standard of review, a Board finding can be reversed on appeal without uncontroverted evidence in the appellant's favor and overruled any suggestion to the contrary in our prior decisions, including *Hicks v. Brown*, 8 Vet.App. 417, 422 (1995) (quoting *Hersey v. Derwinski*, 2 Vet.App. 91, 95 (1992)). A few days after the *Full Court Opinion* issued, the Court learned that, on November 3, 2004, Mr. Padgett had died.

In May 2005, the Secretary filed his pending motion, under *Landicho v. Brown*, 7 Vet.App. 42 (1994), to withdraw the *Full Court Opinion*, vacate the underlying Board decision, and dismiss Mr. Padgett's appeal as moot. Mr. Padgett's widow, Sue Padgett, responded by filing her pending motion for substitution as a party to his appeal. In September 2005, the full Court granted the Secretary's motion and denied Ms. Padgett's request for substitution as moot. *Padgett v. Nicholson* (*Withdrawal Order*), 19 Vet.App. 334 (2005) (en banc per curiam order) (Steinberg & Kasold, JJ., dissenting). Ms. Padgett appealed that order to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit).

In the meantime and while that appeal was pending, the RO began adjudicating two original claims filed by Ms. Padgett. The first sought accrued benefits, i.e., the payment to a surviving spouse (or other eligible beneficiary) of any VA benefits owed to the veteran at the time of his or her death. The second sought dependency and indemnity compensation, i.e., an award of monthly compensation to a surviving spouse (or other eligible beneficiary) in the event that a veteran dies from a service-connected disability. In November 2006, the RO denied both of those claims.

In January 2007, the Federal Circuit decided Ms. Padgett's appeal. It held that this Article I Court had the discretionary authority to enter a judgment nunc pro tunc as of the date of Mr. Padgett's death and to substitute Ms. Padgett as a party to his appeal. *Padgett v. Nicholson* (*Federal Circuit Opinion*), 473 F.3d 1364, 1367-70 (Fed. Cir. 2007) (Linn, J., dissenting). Accordingly, that court reversed the *Withdrawal Order* and remanded the matter for a determination as to whether nunc pro tunc relief and substitution were warranted.

Before addressing that question on remand, this Court ordered the parties to submit an update on the status of Ms. Padgett's claims. The Secretary responded by revealing that shortly after the issuance of the *Federal Circuit Opinion*, he instructed the RO to conduct a "special review" of Ms. Padgett's accrued benefits and DIC claims. He further revealed that at the conclusion of that special review, in late January 2007, the RO issued a new decision on her accrued benefits claim, and that, in that decision, the RO reversed the November 2006 denial of that claim and awarded Ms. Padgett those benefits on the theory that her husband's right-hip disorder was directly service connected. Ms. Padgett did not appeal, and that decision became final.

These are all of the facts relevant to the disposition of the pending motions. With them in mind and for the reasons that follow, the Court will dismiss Ms. Padgett's July 21, 2005, motion for substitution as moot, and deny the Secretary's May 19, 2005, motion to, inter alia, withdraw the *Full Court Opinion*. The Court will also order the Clerk to issue the *Full Court Opinion* nunc pro tunc as of November 2, 2004, the day prior to Mr. Padgett's death.

## I. MS. PADGETT'S MOTION TO SUBSTITUTE

This Article I Court adheres to the case-or-controversy requirement of Article III, § 2, of the United States Constitution. *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) ("[W]e are granted power judicial in nature and being statutorily characterized as a 'Court' we are free, in the absence of a

congressional directive to the contrary, to adopt as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric.").  That constitutional "limitation on federal judicial authority . . . underpins both our standing and our mootness jurisprudence, but the two inquiries differ in respects critical to the proper resolution of this case." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 180 (2000).

In terms of the former, "the party invoking federal jurisdiction bears the burden of establishing [standing]," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)), i.e., an "injury in fact" caused by the challenged conduct of the defendant and likely to be redressed by a favorable decision. *See e.g.*, *Friends of the Earth*, 528 U.S. at 180-81; *Steel Co.*, 523 U.S. at 102-04; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Standing is typically characterized as "[t]he requisite personal interest that must exist at the commencement of the litigation." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (citations and quotations omitted).  However, Article III standing "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance." *Id.* at 64 (1997) (citing *Diamond v. Charles*, 476 U.S. 54, 62 (1986)).  Accordingly, a party seeking to take the place of another litigant on appeal bears the burden of demonstrating that he or she has "'a direct stake in the outcome'" of that proceeding.  *Id.* (quoting *Diamond*, 476 U.S. at 62).

With respect to the latter, a party seeking to deprive a federal court of jurisdiction bears the burden of establishing mootness, *Friends of the Earth*, 528 U.S. at 189-190, i.e., that "[t]he controversy between the parties has thus clearly ceased to be 'definite and concrete' and no longer 'touch(es) the legal relations of parties having adverse legal interests.'" *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974) (per curiam) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)); *see Church of Scientology of Calif. v. United States*, 506 U.S. 9, 12 (1992) (noting that a case is moot if "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party"(quoting *Mills v. Green*, 159 U.S. 651, 653 (1895))); *see also Friends of the Earth*, 528 U.S. at 192 (stating that the Federal courts do not have "license . . . to retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest").  Moreover, that is a "heavy burden" if the party making the allegation of mootness also brought about that result through his or her own voluntary conduct.  528 U.S. at 189-190 (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)); *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  In that circumstance, the culpable party "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190.  Otherwise, "'the courts would be compelled to leave "[t]he defendant . . . free to return to his old ways.""' *City of Mesquite*, 455 U.S. at 289, n. 10 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (internal citations omitted).

The Secretary argues that Ms. Padgett's motion for substitution is moot.  He notes that her standing to seek substitution derived from the continuing relevance and preclusive effect that the issues decided in this appeal would have in the adjudication of her accrued benefits claim.  However, he argues that Ms. Padgett's receipt of those benefits, in late January 2007, eliminated her Article III

interest in this appeal. Ms. Padgett disagrees. She notes that, in the *Full Court Opinion*, we held that her husband's right-hip disorder was secondarily service-connected, and that the Court's holding establishes a basis for her award of accrued benefits. She further notes that our decision—unlike the January 2007 RO decision—cannot be overturned by the Secretary. Therefore, she argues that her Article III interests are served through the preservation of the *Full Court Opinion* to an extent sufficient to defeat any allegation that her motion to substitute is moot.

Before addressing the parties' arguments on the question of mootness, we must first consider whether Ms. Padgett ever had standing to seek substitution. As explained in the *Federal Circuit Opinion*, a party seeking substitution before this Court must satisfy a two-part inquiry. 473 F.3d at 1370; *see also Pekular v. Mansfield*, 21 Vet.App. 495, 500-502 (2007). First, he or she must have Article III standing, 473 F.3d at 1370 (citing *Mokal*, 1 Vet.App. at 13); i.e., "'a personal stake in the outcome'" of the case or controversy on appeal. *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 586-87 (1972) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1968)); *see North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of the litigants before them."); *U.S. Bancorp v. Bonner Mall Partnership*, 513 U.S. 18, 20 (1994) ("[A]n Article III case or controversy . . . must exist at all stages of appellate review."); *Arizonans for Official English*, 520 U.S. at 67 (Under Article III "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."). Second, he or she must have statutory standing, i.e., be "adversely affected" by the Board decision on appeal. *Federal Circuit Opinion*, 473 F.3d at 1370 (citing 38 U.S.C. § 7266(a)); *see also Pekular*, 21 Vet.App. at 500-502. The Federal Circuit already held that Ms. Padgett met both of those requirements when she filed her motion for substitution in July 2005. 473 F.3d at 1370. As this Court is bound by those determinations on remand, we conclude that Ms. Padgett had the requisite standing to seek substitution as a party to this appeal.

Having answered that threshold question, we can properly consider whether her motion to substitute is now moot. We believe that it is. As noted above, Ms. Padgett's standing to seek substitution derived solely from her status as a prospective claimant and potential recipient of accrued benefits. 473 F.3d at 1370 ("The continuing relevance and preclusive effect that the issues decided in [Mr.] Padgett's appeal have for her section 5121(a) claim [for accrued benefits] are sufficient to meet the case or controversy requirement."). However, her claim for accrued benefits has been granted in a final RO decision, and she is now in actual receipt of those benefits. Thus, Ms. Padgett can no longer invoke her prior status in either respect as the Article III interest that supports her substitution as a party to this appeal. In addition, the factual discrepancy between the *Full Court Opinion* and the January 2007 RO decision, in terms of the basis for granting Mr. Padgett service connection, does not provide Ms. Padgett with the Article III interest needed to continue litigating this appeal. Regardless of whether her husband's disability is directly (as the January 2007 RO decision found) or secondarily (as the *Full Court Opinion* held) service connected, the amount of accrued benefits she would receive is exactly the same. *See Roper v. Nicholson*, 20 Vet.App. 173, 177-81 (2006). Finally, the possibility that the Secretary might try to revoke his decision awarding Ms. Padgett accrued benefits in the future does not, without more, create an Article III case or controversy. "[S]uch speculative contingencies afford no basis for our passing on the substantive

4

issues [the movant] would have us decide . . . in the absence of evidence that this is a prospect of immediacy and reality." *DeFunis*, 416 U.S. at 320, n. 5 (internal citations and quotations omitted); *see Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S. 568, 580-81 (1985) (internal quotations omitted)).[1] We are not suggesting that the Secretary's unilateral award of benefits will always moot a case on appeal. Indeed, a contrary result might arise outside the specific facts of this case. For instance, Ms. Padgett's motion for substitution might not be moot if she had appealed the RO's January 2007 decision or if some other claim relevant to the outcome of these proceedings was pending. However, in the absence of such circumstances and on the narrow facts presented here, the Court holds that the Secretary has met his "heavy burden" of establishing that Ms. Padgett's motion is now moot.

## II. THE SECRETARY'S MOTION TO WITHDRAW THE FULL COURT OPINION

The Secretary further argues that Mr. Padgett's appeal is now moot, and that the *Full Court Opinion* must be withdrawn. Though we agree with the Secretary in the first respect, we cannot conclude, on the facts of this case, that the use of our discretionary authority to withdraw the *Full Court Opinion* is warranted.

This appeal no longer satisfies the requirements of Article III. Mr. Padgett's personal stake and continuing interest in the outcome thereof ceased upon his death, *see Federal Circuit Opinion*, 473 F.3d at 1370 (noting "the general rule that a veteran's claim for benefits ends with his death . . ."), and Ms. Padgett's receipt of accrued benefits, in a final RO decision, ensures that neither she nor any other party will be able to continue this litigation on his behalf. *See Pelea v. Nicholson*, 497 F.3d 1290, 1292-93 (Fed. Cir. 2007). Thus, Mr. Padgett's appeal is now undeniably moot.

However, that does not mean that we *must* withdraw the *Full Court Opinion*. First, Mr. Padgett's appeal did not become moot until after the issuance of that decision.[2] Therefore, the proper disposition of the *Full Court Opinion* lies within our sound discretion, *see Humphreys v. Drug Enforcement Administration*, 105 F.3d 112, 113 (3d Cir. 1996) ("Because we plainly had jurisdiction over the appeal at the time our opinion was filed, our decision whether to vacate is discretionary."), and must be made "in the manner '"most consonant to justice" . . . in view of the nature and character of the conditions which have caused the case to become moot.'" *Bancorp*, 513 U.S. 18 at 24 (quoting *United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U.S. 466, 477-78

---

[1]The Court also notes that Ms. Padgett would be afforded a full panoply of substantive and procedural protections in the unlikely event that such an action by the Secretary ever occurred. *See* 38 C.F.R. § 3.500-3.669 (2008) (discussing reductions, discontinuances, and adjustments of benefits).

[2]We know this because, if the opposite were true, the Federal Circuit would have simply dismissed this case for want of jurisdiction. *See Steel Co.*, 523 U.S. at 94 ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case.") (internal citations omitted).

(1916) (quoting *South Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co.*, 145 U.S. 300, 302 (1892))). Consistent with those principles, the relevant authorities in this area distinguish between cases that become moot on appeal "due to circumstances unattributable to any of the parties," *Karcher v. May*, 484 U.S. 72, 83 (1987), or other "happenstance," *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950), and those that become moot on appeal due to the voluntary conduct of one or both parties. *See Friends of the Earth*, 528 U.S. at 194, n. 6 ("We note that it is far from clear that vacatur of the District Court's judgment would be the appropriate response to a finding of mootness on appeal brought about by the voluntary conduct of the party that lost in the District Court."); *Bancorp, supra*; *Staley v. Harris Cty., Texas*, 485 F.3d 305, 311, n.2 (5th Cir. 2007), *cert. petition denied*, 128 S.Ct. 650, 651 (2007) (memorandum); *Mfrs. Hanover Trust Co. v. Yanakas*, 11 F.3d 381, 383 (2d Cir. 1993); *see also Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000) (holding that the *U.S. Bancorp Mortgage Co.* principles are applicable at both the district court and appellate court level when considering whether to withdraw or vacate a decision of the court). In the first situation, the parties are (through no fault of their own) involuntarily deprived of their appellate rights. Thus, justice requires that any prior decisions in that case be withdrawn or vacated. *Bancorp*, 513 U.S. at 25 ("A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment."). Conversely, in the second situation, the culpable party (through his or her own voluntary conduct) effectively forfeits his or her right to further appellate review. Accordingly, justice may require a contrary disposition of any prior decisions. *See Bancorp*, 513 U.S. at 29 ("[H]old[ing] that mootness by reason of settlement does not justify vacatur of a judgment under review."); *Staley*, 485 F.3d at 311, n.2 ("[I]n cases mooted by the voluntary action or inaction of a party, we have decided the vacatur question in favor of the party that did not cause the case to become moot."); *Mfrs. Hanover Trust Co.*, 11 F.3d at 383 ("If we were to vacate where the party that lost in the district court has taken action to moot the controversy, the result would be to allow that party to eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won.").

We believe that Mr. Padgett's appeal became moot because of the voluntary conduct of the Secretary. At the time of the *Federal Circuit Opinion*, this appeal satisfied the requirements of Article III because of Ms. Padgett's ability to seek substitution. However, the Secretary eliminated that possibility with his award of accrued benefits, thereby depriving Ms. Padgett of the Article III interest needed for substitution. Thus, it was the Secretary's decision to award Ms. Padgett accrued benefits, not the death of Mr. Padgett or other happenstance, that ultimately caused this appeal to become moot. Moreover, the Secretary's conduct in that regard was entirely voluntary. He was not obliged to order the "special review" that ended with the RO decision awarding—in a reversal of VA's long-standing position—Mr. Padgett service connection and Ms. Padgett accrued benefits. Accordingly, he pursued that course of action at the risk of impairing, or even sacrificing, his rights in this parallel proceeding. Moreover, even if the Secretary believed he was obliged to order that special review, the prudent course of action—and the one not taken here—would have been to request a stay of the RO proceeding pending a resolution of the remand ordered in the *Federal Circuit Opinion*. *See Ribaudo v. Nicholson*, 20 Vet.App. 552 (2007). For these reasons, the Court

6

holds that the Secretary's voluntary conduct in awarding Ms. Padgett accrued benefits caused this appeal to become moot.

We further believe that the Secretary has not met his burden of showing entitlement to the equitable remedy of withdrawal. *Bancorp*, 513 U.S. at 26.[3] His primary argument in that respect is that a failure to grant a withdrawal effectively precludes his ability to seek further appellate review of the *Full Court Opinion*. However, the Secretary forfeited that right by his own voluntary conduct, and in any event he can seek review of the merits of the legal holdings in the *Full Court Opinion* in other future cases brought before the Federal Circuit. In contrast, Ms. Padgett's countervailing interest in preserving the *Full Court Opinion* is unusually strong, *see Winsett v. Principi*, 341 F.3d 1329, 1331 (holding that final Board decisions appealed to and decided by the Court are not subject to revision on the basis of clear and unmistakable error), and it coincides with that of the public. Judicial decisions "'are not merely the property of private litigants and should stand unless a court concludes that'" a contrary result would serve "the public interest.'" *U.S. Bancorp Mortgage Co.*, 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). As noted above, the *Full Court Opinion* clarified the proper application of the "clearly erroneous" standard of review in cases on appeal to this Court and unanimously overruled any possible contrary interpretation in our prior decisions, including *Hicks*, *supra*. That holding, effective for several months, in 2005, and since the issuance of the *Federal Circuit Opinion*, is part of a decision that the law presumes was correct. *See Bancorp*, 513 U.S. at 26; *Federal Circuit Opinion*, 473 F.3d at 1369. The Court also notes that granting the Secretary's motion to withdraw might sanction his use of an equitable remedy "as a refined form of collateral attack," thereby "disturb[ing] the orderly operation" of the existing statutory system for obtaining appellate review. *Bancorp*, 513 U.S. at 27. That suggestion must be scrupulously avoided in light of the facts of this case. For the foregoing reasons, the Court holds that the Secretary has failed to demonstrate entitlement to the equitable remedies sought in his motion to withdraw. Accordingly, that motion will be denied.

### III. NUNC PRO TUNC AUTHORITY AND MR. PADGETT'S APPEAL

Having concluded that a withdrawal is not warranted, the Court will issue the *Full Court Opinion* nunc pro tunc on the day before Mr. Padgett's death. We recognize that this might seem contrary to the Federal Circuit's admonition that "if Mrs. Padgett could not be substituted, *nunc pro tunc* relief would be inappropriate." *Federal Circuit Opinion*, 473 F.3d at 1370. However, the Court concludes that the Federal Circuit did not intend that rule to extend to cases rendered moot on appeal by the Secretary's voluntary conduct. In that circumstance, an award of nunc pro tunc relief is entirely appropriate. *See* BLACK'S LAW DICTIONARY 1100 (8th ed. 2004) ("'When an order is signed 'nunc pro tunc' as of a specified date, it means that a thing is now done which should have been done

---

[3]We recognize that most of the *Bancorp*-type cases cited herein involve a superior tribunal's refusal to vacate an inferior tribunal's decision where the voluntary conduct of a party causes a case to becomes moot on appeal. *But see Mfrs. Hanover Trust Co.*, *supra*. However, we do not believe that distinction is significant. *Id*. The underlying principle in all of these cases is that a losing litigant should not be able to erase an unfavorable decision by mooting the case through voluntary, post-decisional conduct.

on the specified date.'" (quoting 35A C.J.S. *Federal Civil Procedure* § 370 (1960))); *see also Federal Circuit Opinion*, 473 F.3d at 1370-71.

## IV. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that Ms. Padgett's July 21, 2005, motion to substitute is DISMISSED for lack of jurisdiction.

ORDERED that the Secretary's May 19, 2005, motion to withdraw the *Full Court Opinion*, dismiss the appeal, and vacate the underlying Board decision is DENIED. It is further

ORDERED that the *Full Court Opinion* is issued nunc pro tunc on November 2, 2004.

DATED:     July 8, 2008                     PER CURIAM.

MOORMAN, *Judge*, concurring: I concur in the result reached by the Court that vacatur of the *Full Court Opinion* is not warranted under the circumstances presented here. I write separately to emphasize that the Court here adheres to the "case or controversy" requirement of Article III of the U.S. Constitution. *See Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990). The procedural posture of this case makes it virtually impossible to read our decision as supporting a finding that a "case or controversy" need not exist in order to establish our jurisdiction. Indeed, at the time that the Court issued its *Full Court Opinion* in April 2005, the Court decided issues in Mr. Padgett's appeal that had relevant and preclusive effect on Mrs. Padgett's accrued benefits claim. *See Haines v. West*, 154 F.3d 1298 (Fed. Cir. 1998). Accordingly, the appeal and issue of service connection were not moot at the time the Court issued its *Full Court Opinion*. The fact that Mrs. Padgett has, subsequent to the issuance of that opinion, been awarded accrued benefits does not change the fact that at the time the opinion was filed, we had jurisdiction over the appeal. Despite Mr. Padgett's death, at that time there was a potential accrued benefits claimant, Mrs. Padgett, and Mrs. Padgett sought substitution shortly after the filing of the *Full Court Opinion*. *See Pekular v. Mansfield*, 21 Vet.App. 495, 501 (2007) (noting that the Court's holding in *Landicho v. Brown*, 7 Vet.App. 42 (1994)–that when an appellant died while his case was on appeal to this Court, the appeal must be dismissed *for lack of jurisdiction*–was overruled in cases where an eligible accrued benefits recipient seeks substitution, both by implication in *Zevalkink v. Brown*, 102 F.3d 1236 (Fed. Cir. 1996), and by the express finding in *Padgett v. Nicholson*, 473 F.3d 1364 (Fed. Cir. 2007)).

Regardless of my own view as to whether the *Full Court Opinion* is a correct statement of the law or correct application of the law, the issue now before the Court is whether the Secretary has demonstrated that a balancing of public policies favors the vacatur by this Court of its own previously issued precedential decision. In the unique posture of this case, neither "mootness by reason of settlement," *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994), nor mootness due to the voluntary act of a losing party, *Karcher v. May*, 484 U.S. 72, 82-83 (1987)

8

(holding *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39 (1950), procedure inapplicable because "controversy did not become moot due to circumstances unattributable to any of the parties"), justifies vacatur of our previously released *Full Court Opinion*.


KASOLD, *Judge*, concurring in the result: I write separately to note that I do not believe Mrs. Padgett's motion for substitution is moot. Succinctly stated, the Secretary has awarded benefits based on direct service connection, whereas the Court found that service connection was warranted based on secondary service connection. *See Padgett v. Nicholson* (*Full Court Opinion*), 19 Vet.App. 133, 152 (2005) (en banc). Although an award of service connection based on one theory, as opposed to another, generally results in the same benefit and moots a direct appeal, *Roebuck v. Nicholson*, 20 Vet.App. 307, 315 (2006) ("A claimant need only succeed on one theory of the claim in order to prevail on the underlying claim . . . ."), in this instance the Court has rendered a decision that will be fully binding on the Secretary once finalized, *see Padgett v. Nicholson*, 473 F.3d 1364, 1369 (Fed. Cir. 2007) (noting the certainty of a final judgment relating to issues in the veteran's claim after a decision is rendered by the Court and that "judicial precedents are 'presumptively correct'"), whereas the Secretary's decision is always subject to revision, *see* 38 C.F.R. § 3.500-3.669 (2008) (discussing reductions, discontinuances, and adjustments of benefits); *cf. Winsett v. Principi*, 341 F.3d 1329, 1331 (Fed. Cir. 2003) (holding that final Board decisions appealed to and decided by the Court are not subject to revision on the basis of clear and unmistakable error).

Moreover, the Secretary in this case denied benefits even after the full Court had determined service connection was warranted and withdrew its opinion on other grounds–a situation envisioned by the Federal Circuit. *See Padgett*, 473 F.3d at 1370 (noting that it was "reasonable to suspect" that the Secretary would deny an accrued benefits award to Mrs. Padgett absent the controlling effect of the *Full Court Opinion*). The Secretary only granted benefits after the Federal Circuit reinstated the *Full Court Opinion*, and then did so on a separate theory, leaving open the possibility that it could be changed. Under these circumstances, Mrs. Padgett has a legitimate interest in sustaining the *Full Court Opinion* and the matter therefore is not moot. *Compare City of Erie v. Pap's A.M.*, 529 U.S. 277, 287-88 (2000) (finding matter not moot when underlying basis for litigation could be renewed and other party had an interest in preserving judgment), *with City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 283 (2001) (Speculation alone cannot "shield [a] case from a mootness determination.").

Nevertheless, assuming arguendo that the case is now moot, it certainly was not moot at the time Mrs. Padgett originally sought substitution. Thus, to do now that "'which should have been done on the specified date,'" I would grant Mrs. Padgett's motion for substitution nunc pro tunc to July 21, 2005, the date she filed it. *See* BLACK'S LAW DICTIONARY 1100 (8th ed. 2004) ("'When an order is signed "nunc pro tunc" as of a specified date, it means that a thing is now done which should have been done on the specified date.'" (quoting 35A C.J.S. *Federal Civil Procedure* § 370 (1960))). Finally, I emphasize that regardless of whether or not Mrs. Padgett's interests in the appeal have been mooted by the Secretary's award of accrued benefits, I fully concur that the *Full Court Opinion* should not be withdrawn.

HAGEL, *Judge*, with whom SCHOELEN, *Judge*, joins, dissenting: Although I agree with the majority's determination that Sue Padgett's motion for substitution is moot, I write separately to express my disagreement with the majority's application of the Federal Circuit's recent opinion in this matter and the majority's denial of the Secretary's motion to withdraw the Full Court Opinion in the appeal of Barney Padgett.

In this case, Sue Padgett filed a claim for accrued benefits, which a VA regional office granted in January 2007. As a result of this disposition, the Secretary asserts that Sue Padgett's motion to be substituted for her deceased husband, Barney, in his separate appeal before this Court should be denied. The Secretary further contends that because Barney Padgett is now deceased, his appeal (in which Sue Padgett had sought substitution) is now moot and should be dismissed, resulting in the withdrawal of this Court's April 2005 Full Court Opinion in Barney Padgett's appeal. Sue Padgett opposes the Secretary's motion on the basis that, if the Court's April 2005 opinion is withdrawn, the Secretary would have the authority to rescind the award of accrued benefits by vacating the decision that her husband's disability was service connected. *See* 38 C.F.R. § 3.105 (2008). Despite the majority's conclusion that Barney Padgett's motion before this Court is moot, it holds that withdrawal of the April 2005 Full Court Opinion is unwarranted in this case. The result of this action is the reinstatement of the Full Court Opinion that was issued after the death of the appellant and, hence, after the termination of the claim upon which the appeal was based. In doing so, the majority departs from well established legal precedent and issues an advisory opinion in its purest form.

Although the majority provides the facts it finds relevant to this case, this appeal is more involved than the majority's decision portrays and it is important that we recall clearly the facts of this case and the established precedent governing such situations to put the majority's opinion, and this dissent, into their proper context.

## I. PROCEDURAL HISTORY

The procedural history of this case is far from tidy. It is important to keep in mind, however, when reviewing this history that it involves two separate but related claims–Barney Padgett's claim for disability compensation under 38 U.S.C. § 1110 and his widow, Sue Padgett's, claim to receive any benefits that were due Barney Padgett on that claim, but unpaid at his death, otherwise known as accrued benefits under 38 U.S.C. § 5121.

In December 2002, Barney Padgett appealed the Board's denial of his claim for disability compensation for a right hip disability. In July 2004, a panel of this Court issued a decision remanding Barney Padgett's appeal to VA for its failure to consider certain evidence. Both parties moved for full court consideration of the appeal. The motions were granted in September 2004 and the Court withdrew its July 2004 panel opinion at that time. In November 2004, Barney Padgett died. In June 2006, Sue Padgett filed her own claim for accrued benefits based on her deceased husband's claim.

10

VA denied Sue Padgett's accrued benefits claim in November of 2006. Despite the fact that the July 2004 opinion had been withdrawn in September 2004, VA erroneously cited that opinion as evidence it considered in the adjudication of Sue Padgett's claim.[4]

Neither of the parties notified the Court of Barney Padgett's death and, because the Court was not aware of that fact, the full Court proceeded to consider Barney Padgett's appeal of the Board's decision denying entitlement to disability compensation, issuing its decision in April 2005. The April 2005 Full Court Opinion reversed the Board's decision, finding that Barney Padgett was entitled to *secondary* service connection for his right hip disability, and remanded the claim for VA to consider the issues of entitlement to benefits on direct and presumptive theories. Following notification to the Court of Barney Padgett's death, in September 2005, the Court withdrew the April 2005 Full Court Opinion, citing *Landicho v. Brown*, 7 Vet.App. 42 (1994) and *Zevalkink v. Brown*, 102 F.3d 1236 (Fed. Cir. 1996). Unlike the July 2004 withdrawn Panel Opinion and despite its withdrawal, for unknown reasons the Full Court Opinion was erroneously published in the bound volume of the Veterans Appeals Reporter at 19 Vet. App. 133. *Compare* 18 Vet. App. 188-204. The order withdrawing the April 2005 Full Court Opinion also denied a motion by Sue Padgett to substitute for her deceased husband in his appeal or to intervene therein. It was the Court's September 2005 order, withdrawing its earlier opinion and denying Sue Padgett's motions, that was appealed to the Federal Circuit. On January 5, 2007, the Federal Circuit issued its opinion, reversing this Court's September 2005 order withdrawing the April 2005 Full Court Opinion, and remanding the case to this Court for action consistent with that opinion. 473 F.3d 1364 (Fed. Cir. 2007). In its decision, the Federal Circuit specifically identified two issues which it had to decide:

> This case presents two [questions of law]. First, where a veteran dies after his case is submitted for decision, but before the opinion issues, does the Veterans Court have authority to issue the judgment *nunc pro tunc* as of the time of his death? Second, and intertwined with the first, is whether, under these circumstances, the surviving spouse, as *accrued-benefits* claimant, may be substituted on her husband's appeal?

*Id*. at 1367 (emphasis added). As discussed more fully below, the Federal Circuit answered both questions in the affirmative. *Id*.

Twelve days after the Federal Circuit's opinion was published, VA, apparently acting on its own initiative, conducted a special review of Sue Padgett's accrued benefits claim.[5] As a result of

---

[4] The regional office noted Barney Padgett's death and indicated that the matter was being decided to determine Sue Padgett's entitlement to compensation that may have accrued from the alleged service-connected disability. The regional office decision, however, did not mention either the April or September 2005 actions of the full Court, described below. Sue Padgett's representative, who actively communicated with the regional office regarding her claim for accrued benefits, also failed to call the regional office's attention to them.

[5] Although the rating decision necessarily speaks in terms of Barney Padgett's injury, because Barney Padgett was deceased at that time the only viable claim upon which the regional office could act was Sue Padgett's 2006 accrued benefits claim. In its letter notifying Sue Padgett of her award of benefits, the regional office clearly indicated that it was adjudicating only Sue Padgett's accrued benefits claim.

that review, the regional office found that its prior decision denying VA benefits to Barney Padgett for his right hip disability was clearly and unmistakably erroneous. The regional office found that Barney Padgett's right hip disability was service connected on a *direct* basis and awarded Barney Padgett a disability rating of 30%, effective March 5, 1993, the date he filed his claim. Significantly, however, the decision noted that its findings were made *for the purposes of calculating accrued benefits for a claim filed by Sue Padgett*. On January 18, 2007, Sue Padgett was notified that, based on her claim for accrued benefits, she would receive a sum of $58,225.00 in accrued benefits. The regional office cited both the Full Court Opinion and the Federal Circuit's January 2007 decision, permitting substitution of an accrued benefits claimant in a claim submitted to the Court for decision, as evidence that it considered in reaching its decision.

## II. EXISTING PRECEDENT REGARDING VACATUR ON THE DEATH OF AN APPELLANT

Since our 1994 decision in *Landicho* (approved two years later by the Federal Circuit in *Zevalkink*) this Court has recognized the statutory reality that a claim by a veteran for disability compensation and a claim by a widow for accrued benefits due a deceased veteran or for dependency and indemnity compensation, while related, are separate claims, each emanating from its own statutory basis and each with a different claimant. Further, the Court has recognized that a veteran's claims for disability compensation terminate at his death. *See Landicho*, 7 Vet.App. at 47. *Landicho* also changed the language of Rule 43 of the Court's Rules of Practice and Procedure to permit substitution for a deceased claimant only to the extent permitted by law.

Consequently, since 1994, the Court's standard practice in resolving pending appeals where an appellant dies is to dismiss the appeal as moot and vacate the underlying Board decision. By taking these actions, the Court sought to ensure that an accrued benefits or dependency and indemnity compensation claimant would have his or her independent claims adjudicated without being encumbered by a non-final Board decision on the deceased veteran's underlying claim upon which those benefits might depend. In short, after *Landicho*, the general rule upon the death of an appellant has been to dismiss the appeal, vacate the Board decision that was the subject of that appeal, and deny motions for substitution. *See Pekular v. Mansfield*, 21 Vet.App. 495, 501 (2007). The majority seems to ignore this precedent, instead finding that this Court's authority to withdraw a prior judgment following the death of an appellant is "discretionary." *Supra* at 5.

## III. THE *PADGETT* EXCEPTION TO THE GENERAL RULE ESTABLISHED IN *LANDICHO* AND *ZEVALKINK*

In its January 2007 decision, the Federal Circuit held that, if certain conditions were met, this Court could depart from the general rule established in *Landicho*, permit the substitution of a bona fide accrued benefits claimant for a deceased appellant, and issue its decision *nunc pro tunc*, as if it were decided before the veteran-claimant's death. In doing so, the Federal Circuit recognized the

12

interrelationship between the veteran's disability compensation claim and a survivor's claim for benefits that had accrued to the veteran before his death.[6]

The Federal Circuit began its discussion of this Court's authority to issue a decision *nunc pro tunc* by citing *Mitchell v. Overman*, 103 U.S. 62, 64-66 (1880), for the proposition that when delay in deciding a case is for the convenience of the Court and not the fault of the parties, the Court's decision may be entered retrospectively. Importantly, the Federal Circuit noted that the purpose for such an irregular action was that, "[i]n such cases, . . . it is the duty of the court to see that the *parties* shall not suffer by delay." *Padgett*, 473 F.3d at 1367 (quoting Mitchell, 103 U.S. at 65) (emphasis added). The Court went on to cite a number of cases indicating that the purpose of a *nunc pro tunc* order is to ensure fundamental fairness ***for the parties***. *Id*. at 1368.

The Federal Circuit next noted a significant factual difference between the underlying claims in *Padgett* and *Landicho*. Mr. Landicho died after a Notice of Appeal had been filed with the Court, but before the case had been submitted to the Court for decision. On the contrary, Barney Padgett died after his appeal had been submitted to this Court. Consequently, the Federal Circuit reasoned, it was proper to dismiss Mr. Landicho's appeal, because dismissal of that appeal accompanied by setting aside the underlying Board decision, which was rendered a nullity by virtue of his death, would permit Mrs. Landicho to pursue an accrued benefits claim from the same point that Mr. Landicho was in presenting his claim at the time of his death. *Id*. at 1369. In contrast, the Federal Circuit found that, because Barney Padgett died after his case had been submitted to the Court, the underlying Board decision was in a different state of finality than in *Landicho*. Thus, to place Sue Padgett in the same position as her husband in pursuing her claim, the Court could, if circumstances warranted, issue the Full Court Opinion *nunc pro tunc* to the time prior to Barney Padgett's death. As explained by the Federal Circuit, under these circumstances, Barney Padgett's disability claim would be wholly analogous to the accrued benefits claim of Sue Padgett. *Id*. at 1370.

The Federal Circuit next considered the question of the appropriateness of granting Sue Padgett's motion to substitute for her deceased husband. In so doing it made another specific and important finding that, "[b]ecause of the general rule that a veteran's claim for benefits ends with his death, if Sue Padgett could not be substituted, *nunc pro tunc* relief would be inappropriate." *Id*. The Federal Circuit then explained the two-part test that must be satisfied for substitution to be considered. First, a case or controversy must exist, specifically that the underlying appeal is not moot. *Id*. Second, the party seeking to be substituted must have standing, or be "adversely affected" by the Board decision on appeal, under 38 U.S.C. § 7266(a). *Id*. Lastly, the Court noted a third consideration, whether such relief is required to provide justice and fairness ***to the parties***. I note that in its analysis regarding the appropriateness of substitution in this case, the majority fails to cite

---

[6] Although the reasoning is not entirely clear, the Federal Circuit found that to overcome the termination of a veteran's claim at his death when considering a claim for accrued benefits, a Court decision rendered after the death of a veteran would have to be issued *nunc pro tunc* to the date immediately prior to the veteran's death ***and*** that the live person seeking accrued benefits would have to be substituted as the appellant. In my view, the reason for these requirements would be to prevent the termination, by operation of law, of the appeal of a decedent at his death by means of substituting a live person with standing as the appellant in that appeal. A panel of this Court has discussed this apparent incongruity. *See Pekular*, 21 Vet.App. at 501.

13

the Federal Circuit's decision, in particular the test for substitution. Applying its test, the Federal Circuit's findings and analysis are as follows: the authority to issue a decision *nunc pro tunc* in the case of a deceased veteran depends first upon satisfying the test to substitute a bona fide accrued benefits claimant, and even if substitution could be made, whether the issuance of a decision *nunc pro tunc* is necessary to provide justice to the parties.


## IV. APPLICATION TO THE ISSUES BEFORE THE COURT

First, it is important to note that Barney Padgett's claim died with him, hence, his appeal became moot upon his death in November 2004. *See Landicho*, 7 Vet.App. at 47. The majority seems to ignore this fact in stating "it was the Secretary's decision to award Ms. Padgett accrued benefits, not the death of Barney Padgett or other happenstance, that ultimately caused this appeal to become moot." *Supra* at [xx]. Under the precedent of the Court, Barney Padgett's appeal became moot upon his death, but, as a potential accrued benefits claimant, Sue Padgett, through her motion to substitute, had the potential to revive a case or controversy in Barney Padgett's case. However, because Sue Padgett has now prevailed in her separate claim for accrued benefits, she has already received all the benefits available to her had she prevailed in her motion to be substituted in her deceased husband's appeal to this Court. Thus, the underlying purpose for her motion to substitute, to eliminate unnecessary delay in a decision on her claim for accrued benefits, ceased to exist when her 2006 claim for accrued benefits was granted in January 2007. In short, there is simply no reason now to permit substitution in Barney Padgett's appeal. In terms of the Federal Circuit's test, Sue Padgett fails that test because she is no longer adversely affected by anything that may have occurred in VA's adjudication of her deceased husband's claim. Consequently, her motion to substitute is now moot and Barney Padgett's original appeal remains moot because there is no person with standing to revive it. The majority appears to agree with this analysis and would also deny Sue Padgett's motion to substitute. However, in doing so, the majority fails to recognize that without substitution, only Barney Padgett's underlying appeal is still before the Court. Because his claim terminated at his death, the proper course is to dismiss his appeal and vacate the underlying Board decision. *See Landicho*, 7 Vet.App. at 47.

Although my colleagues writing separately to concur with the majority's disposition of this case would look back to the time that Sue Padgett originally sought substitution to decide the issue of mootness, such a view is not supported by law. *See Arizonans for Official English v. Ariz.*, 520 U.S. 43, 68 (1997) (citing *United States Parole Comm'n v. Gerghty*, 445 U.S. 388, 397 (1980) (describing mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)" (quoting Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L. J. 1363, 1384 (1973)). An appellant must have standing throughout the entire appellate process or the case becomes moot. *Id*. As a result, I disagree with my concurring colleagues' retroactive focus to the time that Sue Padgett filed her original motion for substitution.

Following the dictate of the Federal Circuit's January 2007 decision, because Sue Padgett cannot be substituted for her husband in his claim for benefits, the 2005 Full Court Opinion may not

be given *nunc pro tunc* effect under authority of that case. *Padgett*, 473 F.3d at 1370. As a result, I would grant the Secretary's motion to dismiss Barney Padgett's appeal and to withdraw the April 2005 Full Court Opinion. The majority, however, ignores the Federal Circuit's January 2007 decision in this case and gives the April 2005 Full Court Opinion *nunc pro tunc* effect. This result is not sanctioned by the Federal Circuit. In so doing, the majority avoids discussing the Federal Circuit's analysis in its decision in *Padgett* and relies on a series of cases emanating from *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994).

As explained in *Bancorp*, the disposition of moot cases rests on concepts of equity and the conditions that rendered the case moot. *Bancorp*, 513 U.S. at 24. In *Bancorp*, the Supreme Court decided the narrow issue of whether it was appropriate to order vacatur of a lower appellate court decision when the appeal became moot by reason of settlement. Although the language in *Bancorp*, if taken out of context, could be used to support the majority's position, *Bancorp* cannot be separated from its facts. Furthermore, *Bancorp* and the cases relying on it do not alter this Court's well-established practice of ordering vacatur in moot cases. *See Landicho*, 7 Vet.App. at 47; *see also Bancorp*, 513 U.S. at 23; *United States v. Munsingwear, Inc.*, 340 U.S. 36, 95 (1950).

Indeed, the *Bancorp* line of cases is distinguishable from *Padgett* in that those cases do not involve the fact situation that we have here: two separate claims, each asserted by a different individual in his or her own right, and a motion by one individual to substitute for the other at death. The *Bancorp* line of cases focus on fairness to the parties who have a demonstrated interest in the litigation. In this case, the only parties who had any interest in this litigation at any time are Barney and Sue Padgett. However, Barney Padgett has no further interest in this litigation because any entitlement to benefits was extinguished at his death. Sue Padgett no longer has an interest in this litigation because she has been awarded all of the benefits that she sought.

Furthermore, the cases cited by the majority are not governed by law dictating that a veteran's claim dies with the veteran. *See Landicho*, 7 Vet.App. at 47. Barney Padgett's appeal, not Sue Padgett's accrued benefits claim, was considered by the Court in April 2005. Indeed, the appeal remains Barney Padgett's even if Sue Padgett were to be substituted for him following the guidance provided by the Federal Circuit. The only purpose of substitution would be to avoid any unnecessary delay in a decision on Sue Padgett's claim, which was derivative of her husband's underlying claim now on appeal. However, when Sue Padgett's separate claim for accrued benefits was granted, any reason for substitution of Sue Padgett in Barney Padgett's underlying appeal ceased to exist.

If the course set by the Federal Circuit were followed, there could be no substitution and consequently no action that would warrant issuing our April 2005 decision *nunc pro tunc*. Rather, in this situation, the Court's standard and consistent practice of dismissing the appeal and vacating the offending Board decision is the appropriate course of action. Such actions would eliminate the 2002 Board decision that, if left in place, would conflict with the 2007 regional office decision granting Sue Padgett's claim for accrued benefits and there would be no resulting injustice to the parties. Any other course, no matter how well intentioned, amounts to an advisory opinion on issues no longer before this Court.

Assuming that this Court could, through the exercise of some inherent power, permit its decision in a moot appeal to remain as precedential authority based on concepts of equity, the cases cited simply do not support such action. Should the majority wish to establish a new exception to the general rule in *Landicho*, it should do so clearly, instead of ignoring the well-established precedent of the Court.

The majority states that the *Full Court Opinion* clarified the application of the "clearly erroneous" standard of review in cases on appeal to this Court.[7] However, although I agree with the articulation of the "clearly erroneous" standard of review expressed therein, a review of the cases cited in the *Full Court Opinion* does not compel the conclusion that a clarification of the appropriate application of the "clearly erroneous" standard of review was necessary. *See Hicks v. Brown*, 8 Vet.App. 417, 422 (1995); *see also Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). Further, assuming that clarification is needed, the issue of the application of the "clearly erroneous" standard of review arises with great frequency in appeals before this Court and could be clarified in other cases that present the Court with a true conflict involving parties with standing and in which the Court's pronouncement will have an actual effect on the necessary parties, as opposed to this case, in which the Court is reinstating a free-standing, advisory opinion unattached to any existing case or controversy. Certainly, the majority does not explain why the facts of this case demand such a drastic departure from our precedent, which in turn would only set a bad, or at least inexact, precedent that may itself one day require further clarification.

By this dissent, I do not say that I would never deny a motion to vacate a decision of this Court. However, the facts of this case do not support abandoning our traditional adherence to the concept of mootness in favor of applying equitable principles. For these reasons, I respectfully dissent.

---

[7] The majority states that the Full Court Opinion was "effective for several months, in 2005, and since the Federal Circuit Decision." *Supra* at 7. To be more specific, the Full Court Opinion was issued April 19, 2005, and withdrawn on September 7, 2005, slightly more than 5 months.